**LEVIN ET AL., Plaintiffs-Appellants, v. PENNSYLVANIA RAIL-
ROAD CO. ET AL., Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20402.    Decided December 30, 1946.

Levin & Levin, Lorain, for Plaintiffs-Appellants.
Squire, Sanders & Dempsey, Cleveland, for Defendants-
Appellees.

**OPINION**

By MORGAN, J.

Plaintiffs are attorneys at law, engaged in the practice of
law in the City of Lorain, under the name of Levin & Levin.
On December 26, 1944, they filed their petition in common
pleas court of Cuyahoga County against Clarence L. Jenkins
and The Pennsylvania Railroad Company, defendants, in which
they allege that on Sept. 27, 1944, the defendant Jenkins en-

tered into a contract with plaintiffs whereby the said defendant retained and employed plaintiffs as attorneys to represent him in recovering damages from the Pennsylvania Railroad Company for injuries sustained on or about August 29, 1944 at the Sandusky Yard of said company while at work for the company. That by said contract Jenkins agreed to pay the plaintiffs fifty percent of whatever amount might be recovered by settlement or suit and he assigned to the plaintiffs a fifty percent interest in his claim.

That on Sept. 28, 1944, plaintiffs by letter notified the defendant, the Pennsylvania Railroad Company that they had been engaged by Jenkins to represent him in his said claim against the company and enclosed a copy of their contract of employment.

The petition then alleges, "that thereafter the defendants did secretly and surreptitiously and with intent and purpose of defrauding the plaintiffs and of circumventing said contract enter into an agreement for the settlement of all claims arising out of said accident of August 29, 1944."

The prayer of the petition is "for an accounting against the defendants and for a judgment against defendants for an amount equal to fifty percent of whatever settlement has been made."

The case was tried to the court which rendered judgment for the defendant, The Pennsylvania Railroad Company, and against the defendant, Jenkins, for $834.00, being fifty percent of the amount received by him on the settlement, plus interest and costs.

The facts as shown by answers to the interrogatories and the evidence, are as follows:

On August 29, 1944, defendant Jenkins, an employee of the Pennsylvania Railroad Company, was injured while at work in the yards of the company at Sandusky, Ohio. On the evening of Sept. 27, 1944, Jenkins, following a conference with one of the plaintiffs at their law office in Lorain, Ohio, retained and employed the plaintiffs to represent him in his claim against the railroad company and entered into a written contract as alleged in the petition.

On the following day, Sept. 28, 1944, plaintiffs mailed a letter addressed to "The Pennsylvania Railroad Company, Philadelphia, Pa.," notifying the company that plaintiffs had been retained by Jenkins and enclosing a copy of the contingent fee contract.

On October 6th the company made a settlement with Jenkins and obtained from him a release in consideration of the cash payment of $1500.00.

The question at issue between the parties in this case is whether the railroad company on or before Oct. 6, 1944 had knowledge or had been put on notice of the claim of the plaintiffs as counsel for Jenkins, based on their contingent fee contract so that the settlement made and release obtained by defendant Railroad Company on October 6, 1944, would be subject to plaintiff's claim.

It is conceded by the defendant railroad company that equity will recognize a contingent fee contract and a partial assignment as is involved in this case, if it be shown that the company had knowledge of the contract and assignment when the settlement was made.

The question to be determined in this case is accordingly, did the railroad company have such knowledge or will it be considered to have had such knowledge when it settled the case for $1500.00?

Depositions were taken of all the employees of the railroad company in Philadelphia who in the ordinary course of events would open or see such a letter. Hundreds of such letters in the ordinary course of events, addressed to "The Pennsylvania Railroad Company, Philadelphia" are received daily and no employee in Philadelphia recalled opening or seeing this particular letter but evidence was given in some detail as to how such a letter would be handled in the ordinary course of business.

A letter addressed to "The Pennsylvania Railroad Company, Philadelphia, Pa." is delivered by the United States Post Office in Philadelphia to the Railroad Post Office in the 30th Street Station. A letter so addressed is delivered by the 30th Street Station Post Office to the Office of the Secretary of the Railroad Company in the Broad Street Station building. One delivery is made daily and always before nine o'clock in the morning. A clerk in the office of the Secretary of the Company opens such letters and directs them to the proper department. A letter such as plaintiffs' letter of Sept. 28, 1944, would be delivered by a messenger of the Secretary's office to the Legal Department located in the same building. A clerk in the Legal Department would deliver all letters relating to personal injury claims not yet in litigation, such as plaintiffs' letter, to the office of the General Claim Agent in charge of the Bureau of Claims located in the same building. The Chief Clerk of the General Claim Agent in turn would mail the letter to the Chief Claim Agent in charge of the region where the claim originated. Such Chief Claim Agent in this case was P. J. Cronin, located in Chicago.

It is thus seen that no one of the employees of the railroad company in Philadelphia, who in the ordinary course of events

would open or examine such a letter as plaintiffs' letter of Sept. 28, 1944, would have any authority or responsibility with reference to such letter or its contents other than to direct the letter to the official having responsibility and authority therein who in this case was the Chief Claim Agent located in Chicago.

In the ordinary course of business such a letter as plaintiffs' letter of Sept. 28, 1944, would be handled in the following manner on its arrival in Chicago. A girl "file clerk" in the office of the Chief Claim Agent would open such letter, would stamp it with a date stamp and place it on Cronin's desk. This is the first time that such a letter would be stamped with a date stamp. The stamp on this letter indicates that it was received by the office of the Chief Claim Agent in Chicago on Oct. 7, 1944.

R. E. Veidt, a District Claim Agent of defendant company, located in Toledo, had seen Jenkins shortly after he was injured and promised to see him again. Plaintiffs were informed about this visit of the claim agent by Jenkins on the evening of Sept. 27, 1944, when the contingent fee contract was signed. Veidt, however, did not see Jenkins again until Sept. 29, 1944, after the plaintiffs had been retained as counsel by Jenkins. Both Veidt and Jenkins testified that nothing was said at their meeting to indicate that Jenkins had retained the plaintiffs and Veidt testified that when the settlement with Jenkins was later made he had no knowledge that the plaintiffs had been retained by Jenkins as counsel. Veidt prepared a regular report of the matter on Sept. 30, and mailed it to the Chief Claim Agent in Chicago. This report was received in Chicago on Oct. 2. Veidt also called Cronin by telephone and suggested that if authority to settle the claim for a certain amount would be granted he should send along a sight draft for the amount. On Oct. 4th Cronin mailed a letter to Veidt authorizing a settlement of the claim with Jenkins for $1500.00 and enclosed a sight draft for that amount. Jenkins settled the claim and executed a release on Oct. 6th and received the draft for $1500.00. Veidt reported the settlement by letter to the Chief Claim Agent in Chicago which was received on Oct. 7, 1944.

Cronin was out of town on October 7th. On his return to his desk on Monday, Oct. 9, he found Veidt's letter as well as plaintiffs' letter of Sept. 28th which had been stamped as received on Oct. 7th. After examining plaintiffs' letter he telephoned Veidt at Toledo and Veidt verified that he had made a settlement with Jenkins on Oct. 6, 1944, for $1500.00.

We have set forth the evidence in this case with some detail because it discloses that the allegation of plaintiffs' petition that "the defendants did secretly and surreptitiously and with an intent and purpose of defrauding the plaintiffs and of

circumventing said contract, enter into an agreement for the settlement of the claim arising out of said accident of August 29, 1944" is based solely on suspicion and is not supported by any evidence.

In their briefs and argument in this court, the plaintiffs take a somewhat different position from that set forth in their petition. In their brief they state:

"It is the position of the plaintiffs that notice to the legal department and general claim agent of The Pennsylvania Railroad Company at Philadelphia was notice to the corporation and bound the corporation from the time of its receipt on Sept. 30, 1944."

The record discloses that the Pennsylvania Railroad Company operated over 10,000 miles of railroad in thirteen states and the District of Columbia. It has organized its Bureau of Claims by establishing three chief claim agents; one in Philadelphia, another in Pittsburg and the third in Chicago. Under the chief claim agent located in Chicago there are nine district offices. Under this set up the legal department and the general claim office, located in Philadelphia, are not authorized to take any action or to assume any authority with reference to any personal injury claims originating in the Chicago region. The instructions to the clerks in the legal department and the general claim office of the company in Philadelphia are to direct all letters concerning personal injury claims originating in the Chicago region to the chief claim agent in Chicago and they have no further authority as to such letters. Certainly the Pennsylvania Railroad Company has a right to set up its department of claims in such manner and with such division of powers as it deems most conducive to the efficient operation of the system.

It is not true that anything coming to the knowledge of any employee of the railroad company is considered to have come to the knowledge of the company. If this were true, then in this case the company would be considered to have received notice of plaintiffs' letter of Sept. 28, 1944, when it was opened and inspected by a clerk in the office of the secretary of the company for the purpose of directing it to the proper department. That such is not the case is shown by the principle announced in the second syllabus in the case of **Bank v Burns et al, 88 Oh St 434** as follows:

"A corporation can act only through its officers and agents, and the knowledge of such officers and agents in the trans-

action of the corporation's business within the scope of their authority becomes at once the knowledge of the corporation without any actual or presumptive communication from agent to principal."

The important limiting words in the above syllabus are "within the scope of their authority." Knowledge coming to an agent or employee of the company on a matter not within the scope of his authority is not to be regarded as the knowledge of the corporation.

Knowledge coming to a clerk is not usually considered to be the knowledge of the corporation.

In Cook on Corporations, 8th Ed. Vol. 4, Sec. 727, it is stated:

"It is well settled that a corporation is not chargeable with knowledge of facts merely because those facts were known to its incorporators, or stockholders, or clerk or promoters. But the corporation has notice of facts which come to the knowledge of its officers or agents while engaged in the business of the corporation, provided those facts pertain to that branch of the corporate business over which the particular officer or agent has some control."

Plaintiff relies on the case of **State ex rel v Industrial Commission, 108 Oh St 139.** In that case an assignment of a claim was received at the central office of the Industrial Commission four days prior to the action of the Commission in paying out money to the assignor. It was held that the Industrial Commission of Ohio was deemed to have notice of an assignment which was sent to its central office and not actually brought to the attention of the Commission through some delay or carelessness on the part of a subordinate in filing the notice in the proper file. The opinion is based on the theory that the carelessness of a clerk in the central office of the Commission did not excuse the Commission.

The plaintiff in this case failed to prove carelessness or negligence on the part of The Pennsylvania Railroad Company or any of its employees. When asked as to the time required for mail to be delivered in Chicago from Philadelphia, Cronin answered as follows:

"On occasions we get mail from Philadelphia in a day. That is from one morning to the next morning. On other

occasions it would take two or three days, and it has taken as long as six days to get mail from Philadelphia."

Accordingly, the fact that a letter mailed in Lorain on Sept. 28th, addressed to the railroad company in Philadelphia passed over the desks of three clerks and was not delivered in Chicago until Oct. 7th is not proof of negligence in the handling and delivery of the letter by the railroad company.

The holding of the trial court that the plaintiffs failed in this case to prove that defendant railroad company had knowledge of plaintiffs' contract with Jenkins or had been put on notice of such contract at the time it made its settlement with Jenkins is sustained by the record.

The judgment is affirmed.

SKEEL, PJ, and HURD, J, concur.